# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF OHIO
# EASTERN DIVISION

JASON M. FRANCIS,

    Plaintiff,

v.

                            Civil Action 2:17-cv-1022
                            Judge George C. Smith
                            Magistrate Judge Chelsey M. Vascura

COMMISSIONER OF SOCIAL SECURITY,

    Defendant.

## REPORT AND RECOMMENDATION

Plaintiff, Jason M. Francis ("Plaintiff"), brings this action under 42 U.S.C. § 405(g) for review of a final decision of the Commissioner of Social Security ("Commissioner") denying his application for supplemental security income. This matter is before the undersigned for a Report and Recommendation on Plaintiff's Statement of Errors (ECF No. 8), the Commissioner's Response in Opposition (ECF No. 13), Plaintiff's Reply (ECF No. 14), and the administrative record (ECF No. 6). For the reasons that follow, it is **RECOMMENDED** that Plaintiff's Statement of Errors be **OVERRULED** and that the Commissioner's decision be **AFFIRMED**.

## I.    BACKGROUND

Plaintiff protectively filed his application for supplemental security income on June 9, 2014. In his application, Plaintiff alleged a disability onset of January 6, 2014. Plaintiff's application was denied initially on October 9, 2014, and upon reconsideration on November 26, 2014. Plaintiff sought a hearing before an administrative law judge. Administrative Law

Judge Noceeba Southern ("ALJ") held a hearing on November 9, 2016, at which Plaintiff, represented by counsel, appeared and testified. Vocational expert Connie O'Brien-Heckler (the "VE") also appeared and testified at the hearing. On January 12, 2017, the ALJ issued a decision finding that Plaintiff was not disabled within the meaning of the Social Security Act. On September 29, 2017, the Appeals Council denied Plaintiff's request for review and adopted the ALJ's decision as the Commissioner's final decision. Plaintiff then timely commenced the instant action.

In his Statement of Errors (ECF No. 8), Plaintiff advances two contentions of error. First, Plaintiff contends that the ALJ's mental RFC is not supported by substantial evidence because the ALJ failed, without sufficient explanation, to incorporate the limitations opined by the state agency psychologists whose opinions she assigned significant weight. Specifically, Plaintiff asserts that the ALJ improperly omitted opined limitations relating to interaction with others and fast-paced work. Second, Plaintiff challenges the ALJ's consideration and weighing of an opinion rendered by Dr. Robert Dominguez, M.D. More specifically, Plaintiff argues that the ALJ improperly determined that Dr. Dominguez was not a treating physician and that the opinion was merely a conclusory, checkbox form.

In her Response, the Commissioner maintains that the ALJ's mental RFC is supported by substantial evidence. The Commissioner argues that the ALJ's decision as a whole satisfactorily explains the omitted limitations and supports the RFC determination. Additionally, the Commissioner contends that the ALJ's failure to include the opined limitation to limited, superficial interaction with supervisors is harmless because the jobs Plaintiff can perform do not involve more than limited, superficial interaction with others. Finally, the

Commissioner argues that the weight assigned to Dr. Dominguez's opinion is supported by substantial evidence and that the ALJ's conclusion was properly within the permissible zone of choice.

## II. RELEVANT OPINION EVIDENCE

The record contains five opinions relating to Plaintiff's ability to perform work-related activities due to his mental impairments: (1) March 2014 opinion from consultative examiner Dr. Marc E. Miller, Ph.D.; (2) September 2014 opinion from consultative examiner Dr. Miller; (3) October 2014 opinion from state agency reviewer Dr. Paul Tangeman, Ph.D. at the initial level; (3) December 2014 opinion from state agency reviewer Dr. Karla Voyten, Ph.D. upon reconsideration; and (4) October 2016 opinion from Dr. Robert Dominguez, M.D.

In March 2014, consultative examiner Dr. Miller opined that Plaintiff is "able to follow one and two-step tasks at a time;" can "understand, remember and carry out [] simple, routine job instructions;" has difficulty interacting with others; has "no significant impairment" with attention and concentration; has "some difficulty" dealing with the stress and pressure of a work environment; and has adequate abilities with respect to persistence and task completion. (R. at 565.)

In September 2014, consultative examiner Dr. Miller provided a second opinion, in which he stated that Plaintiff has "some issues" understanding, remembering, and carrying out instructions; "difficulty" interacting with others; "some difficulty" with attention span and concentration; and "some issues" dealing with the stress and pressures of a work environment. (R. at 354-55.)

In October 2014, state agency reviewing psychologist Dr. Tangeman opined that

Plaintiff "requires SRTs in a stable, static work environment with limited, superficial interactions with others, limited independent decision mak[ing] and limited fast paced production standards." (R. at 67.) Upon reconsideration in December 2014, state-agency reviewing psychologist Dr. Voyten affirmed the assessment from Dr. Tangeman. (R. at 77-78.)

Finally, Dr. Dominguez, a physician at the Fairfield Community Health Center, provided an opinion regarding Plaintiff's ability to perform work-related activities. Dr. Dominguez opined that Plaintiff's mental health impairments cause significant limitations and prevent him from maintaining competitive employment. (R. at 626-27.)

### III. THE ADMINISTRATIVE DECISION

On January 12, 2017, the ALJ issued her decision. (R. at 12-24.) At step one of the sequential evaluation process,[1] the ALJ found that Plaintiff had not engaged in substantial

---

1. Social Security Regulations require ALJs to resolve a disability claim through a five-step sequential evaluation of the evidence. *See* 20 C.F.R. § 416.920(a)(4). Although a dispositive finding at any step terminates the ALJ's review, *see Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007), if fully considered, the sequential review considers and answers five questions:

   1. Is the claimant engaged in substantial gainful activity?

   2. Does the claimant suffer from one or more severe impairments?

   3. Do the claimant's severe impairments, alone or in combination, meet or equal the criteria of an impairment set forth in the Commissioner's Listing of Impairments, 20 C.F.R. Subpart P, Appendix 1?

   4. Considering the claimant's residual functional capacity, can the claimant perform his or her past relevant work?

   5. Considering the claimant's age, education, past work experience, and residual functional capacity, can the claimant perform other work available in the national economy?

*See* 20 C.F.R. § 416.920(a)(4); *see also Henley v. Astrue*, 573 F.3d 263, 264 (6th Cir. 2009);

gainful activity since June 9, 2014, the alleged onset date. The ALJ found that Plaintiff had the severe impairments of organic mental, anxiety disorder, social phobia, and borderline intellectual functioning. She further found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments described in 20 C.F.R. Part 404, Subpart P, Appendix 1. At step four of the sequential process, the ALJ set forth Plaintiff's RFC as follows:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations: the claimant requires goal based work, limited to simple routine tasks and few decision-making requirements on the job. He requires few changes in the work setting. He should not interact with the public, but could have superficial contact with coworkers and only occasional interaction with supervisors. He would be off task less than 10 percent of the workday and would need a position where there is no money management or tandem work required.

(R. at 17.)

In assessing Plaintiff's RFC, the ALJ assigned consultative examiner Dr. Miller's March 2014 opinion "significant weight," reasoning that, "[w]hile Dr. Miller did not provide vocationally relevant limits for all abilities, the undersigned has interpreted Dr. Miller's statements to be consistent with the residual functional capacity as assessed." (R. at 21.) The ALJ assigned Dr. Miller's September 2014 opinion "significant weight," reasoning that, "[w]hile Dr. Miller did not provide vocationally relevant limits, the undersigned has interpreted Dr. Miller's statements to be consistent with the residual functional capacity as assessed." (R. at 21.) The ALJ assigned "significant weight" to the opinions of state agency reviewing psychologists Drs. Tangeman and Voyten, reasoning as follows:

---

*Foster v. Halter*, 279 F.3d 348, 354 (6th Cir. 2001).

5

> The undersigned considered the opinion[s] of the Bureau of Disability Determination consultants expressed in the Mental Residual Functional Capcit[ies] set forth in Exhibit[s] 1A and 3A. Although neither examining nor treating mental health providers, these experts are licensed psychologists with knowledge of the Social Security Administration's program and requirements. Their opinion[s] [are] consistent with the medical evidence of record. Therefore, the undersigned gives the Bureau of Disability Determination opinion[s] significant weight.

(R. at 21.) Finally, the ALJ assigned "little weight" to Fairfield Community Health Center physician Dr. Dominguez's opinion, observing that, "although it appears Dr. Dominguez is a treating source at the Fairfield Community Health Center, . . . there is no evidence in [the] file that he actually treated the claimant or has a longstanding treating relationship with the claimant." (R. at 20.) Additionally, the ALJ explained that the opinion "is merely a check box form, which does not offer a function-by-function analysis . . . , merely a conclusory assertion." (*Id.*) Finally, the ALJ noted that "Dr. Dominguez does not provide sufficient clinical and laboratory data to support his conclusion," and the record reflects that Plaintiff's symptoms were improving with medication and therapy. (*Id.*)

Relying on the VE's testimony, the ALJ concluded that Plaintiff could perform jobs existing in significant numbers in the national economy, including: car washer, *Dictionary of Occupational Titles* ("DOT") § 919.687-014; dry cleaner helper, DOT § 362.686-010; dryer attendant, DOT 581.686-010; floor waxer, DOT § 381.687-034; night cleaner, DOT § 323.687-014; and security system monitor, DOT § 379.367-010. (R. at 23.) The ALJ therefore concluded that Plaintiff was not disabled under the Social Security Act. (R. at 23-24.)

## IV. STANDARD OF REVIEW

When reviewing a case under the Social Security Act, the Court "must affirm the Commissioner's decision if it 'is supported by substantial evidence and was made pursuant to

6

proper legal standards.'" *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009) (quoting *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007)); *see also* 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . ."). Under this standard, "substantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rogers*, 486 F.3d at 241 (quoting *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994)).

Although the substantial evidence standard is deferential, it is not trivial. The Court must "'take into account whatever in the record fairly detracts from [the] weight'" of the Commissioner's decision. *TNS, Inc. v. NLRB*, 296 F.3d 384, 395 (6th Cir. 2002) (quoting *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 487 (1951)). Nevertheless, "if substantial evidence supports the ALJ's decision, this Court defers to that finding 'even if there is substantial evidence in the record that would have supported an opposite conclusion.'" *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009) (quoting *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)).

Finally, even if the ALJ's decision meets the substantial evidence standard, "'a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.'" *Rabbers*, 582 F.3d at 651 (quoting *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2007)).

V.     ANALYSIS

As set forth above, Plaintiff maintains that the ALJ erred in her consideration of the medical source opinions in the record because she (1) failed to explain why she omitted limitations opined by Drs. Tangeman and Voyten, whose opinions she assigned significant weight, and (2) failed to give good reasons for discrediting the opinion from treating source Dr. Dominguez. The undersigned finds these contentions of error to be unpersuasive.

A.     **Omission of Limitations from Credited Opinions in the RFC**

Plaintiff first contends that the ALJ, without explanation, omitted RFC limitations endorsed in opinions to which she assigned significant weight, thereby depriving the RFC of support by substantial evidence. The undersigned finds any such error to be harmless.

A plaintiff's RFC "is defined as the most a [plaintiff] can still do despite the physical and mental limitations resulting from her impairments." *Poe v. Comm'r of Soc. Sec.*, 342 F. App'x 149, 155 (6th Cir. 2009); *see also* 20 C.F.R. §§ 404.1545(a), 416.945(a). The determination of RFC is an issue reserved to the Commissioner. 20 C.F.R. §§ 404.1527(e), 416.927(e). Nevertheless, substantial evidence must support the Commissioner's RFC finding. *Berry v. Astrue*, No. 1:09CV000411, 2010 WL 3730983, at *8 (S.D. Ohio June 18, 2010). In calculating a claimant's RFC, an ALJ is not required to mirror or parrot medical opinions verbatim. *Poe v. Comm'r of Soc. Sec.*, 342 F. App'x 149, 157 (6th Cir. 2009). But where, as here, the ALJ assigns a particular opinion "significant" weight and states it is consistent with the record, she must incorporate all of the opined limitations or provide an explanation for declining to do so. *See, e.g.*, *Queen v. Comm'r of Soc. Sec.*, No. 2:16-cv-1082, 2017 WL 6523296, at *9-10 (S.D. Ohio Dec. 21, 2017) (remanding where the ALJ "failed to include at least one

limitation" from an opinion he had assigned great weight without explaining the omission).

At issue in this contention of error are two limitations the state-agency reviewing psychologists opined. As set forth above, the ALJ assigned "significant weight" to the opinions of reviewing psychologists Drs. Tangeman and Voyten, concluding that their opinions were "consistent with the medical evidence of record." (R. at 21.) As relevant here, the reviewing psychologists opined that Plaintiff required a work environment with "limited fast paced production standards" and "limited, superficial interaction with others." (R. at 67 and 78.) The ALJ's RFC did not copy the these limitations verbatim, but instead restricted Plaintiff to a limited range of "goal based work," adding that "[h]e would be off task less than 10 percent of the workday," and also the following limitation relating to social interaction: "He should not interact with the public, but could have superficial contact with coworkers and only occasional interaction with supervisors." (R. at 17.) Thus, at issue is whether the ALJ erred in not incorporating these limitations in her RFC assessment.

With respect to the first of these limitations—limited fast paced production standards—the undersigned concludes that the RFC the ALJ assessed accounts for this limitation and is, in fact, *more* restrictive than opined. Significantly, neither reviewing psychologist opined that Plaintiff could not perform fast-paced work, only that the amount of fast-paced production work be "limited." (R. at 67 and 78.) Regardless, the ALJ limited Plaintiff to a significantly reduced range of "goal based work," which is commonly understood to mean work measured by the end result as contrasted with pace work.[2] To the extent Plaintiff's counsel did not understand how

---

2. *See, e.g.*, *Chapman v. Comm'r of Soc. Sec.*, No. 2:18-cv-258, 2018 WL 4292154, at *4 (S.D. Ohio Sept. 10, 2018) (RFC included limitation to "a work environment that is not fast-paced or does not have unusual production demands, defined as goal-based production or work measured

the ALJ and the VE defined "goal-based production," he was free to seek clarification during the hearing, but failed to do so. (*See* R. at 53-57 (seeking clarification about the social limitations only).) Moreover, the ALJ included an additional limitation that Plaintiff would be off task less than ten percent of the workday. Finally, even if the ALJ erred in not specifically including the language "limited fast paced production standards" in the RFC, such error would be harmless given that five of the six the jobs identified by the ALJ do not require fast-paced production standards. *See* DOT §§ 919.687-014, available at 1991 WL 687897; 581.686-010, available at 1991 WL 684213; 381.687-034, available at 1991 WL 673262; 323.687-014, available at 1991 WL 672783; 362.686-010, available at 1991 WL 673006; *cf. Burnett v. Berryhill*, No. 2:16-1637-MGL-MBG, 2017 WL 3835843, at *9 (D.S.C. Aug. 3, 2017) (noting VE testimony that an individual limited to no production or fast-paced work could work as a cleaner, DOT § 919.687-014, and dryer attendant, DOT § 581.686-010); *Scott v. Comm'r of Soc. Sec.*, No. 2:15-cv-3085, 2016 WL 6405899, at *3 (S.D. Ohio Oct. 31, 2016) (recommending that the Court affirm the

---

by end result, not pace work"); *Maxwell v. Comm'r of Soc. Sec.*, No. 2:17-cv-835, 2018 WL 2173591, at *6 (S.D. Ohio May 11, 2018) (RFC included limitation to "goal-based production where the work is measured by end result, not pace work"); *Drews v. Comm'r of Soc. Sec.*, No. 2:16-cv-191, 2017 WL 782985, at *3 (S.D. Ohio Feb. 13, 2017) (same); *Blanton v. Comm'r of Soc. Sec.*, No. 3:15-cv-1864, 2016 WL 4272126, at *5 (N.D. Ohio Aug. 15, 2016) (same); *Rider v. Comm'r of Soc. Sec.*, No. No. 2:17-cv-41, 2018 WL 12500029, at *3 (S.D. Ohio Mar. 12, 2018) (RFC included limitation of "goal-based production/work measured by end result, not pace work"); *Bruce v. Comm'r of Soc. Sec.*, No. 3:16-cv-1329, 2017 WL 3238049, at *2 (N.D. Ohio July 29, 2017) (same); *Morris v. Comm'r of Soc. Sec.*, No. 2:16-cv-132, 2017 WL 1287146, at *5 (S.D. Ohio Apr. 6, 2017) (same); *Sims v. Comm'r of Soc. Sec.*, No. 2:16-cv-342, 2017 WL 4236578, at *5 (S.D. Ohio Sept. 25, 2017) (RFC included limitation to "goal-based production where the work is measured by the end result, without pace-work"); *Dorst v. Colvin*, No. 3:15-cv-1687, 2016 WL 4625010, at *1 (RFC included limitation to "goal based production (work measured by the end result, not pace work)"); *Hickman v. Comm'r of Soc. Sec.*, No. 2:16-cv-859, 2018 WL 817876, at *6 (S.D. Ohio Feb. 12, 2018) ("The ALJ explained that he limited [the plaintiff] to goal-based rather than pace-based production . . . because he required a low-stress environment.").

Commissioner's non-disability finding where a plaintiff limited to no strict production quotas or fast-paced work was found to be able to work as a floor waxer, DOT § 381.687-034), *R&R adopted*, 2017 WL 1187907 (S.D. Ohio Mar. 30, 2017); *Blevins v. Colvin*, No. 2:14-1572, 2015 WL 930195, at *14 (S.D.W. Va. Mar. 3, 2015) (noting VE testimony that a plaintiff limited to no fast-paced production standards could work as a night cleaner, DOT § 323.687-014); *Blanken v. Colvin*, No. 2:13cv00050, 2015 WL 627945, at *1 (W.D. Va. Feb. 12, 2015) (noting VE testimony that a plaintiff limited to no fast-paced production requirements could work as a dry-cleaner helper, DOT § 362.686-010).

The undersigned likewise concludes that the ALJ's failure to limit Plaintiff to superficial interactions with supervisors (as she did with co-workers) is likewise harmless. As the Commissioner points out, five of the six jobs the ALJ identified as jobs Plaintiff can perform require only limited relationships with people. Specifically, the *Dictionary of Occupational Titles*' descriptions reflect that the level of interaction with others is limited to "taking instructions/helping," at a "not significant" level. *See* DOT § 919.687-014, available at 1991 WL 687897; DOT § 362.686-010, available at 1991 WL 673006; DOT § 581.686-010, available at 1991 WL 684213; DOT § 323.687-014, available at 1991 WL 672783; DOT § 381.687-034, available at 1991 WL 673262.[3] As defined in Appendix B of the *Dictionary of Occupational Titles*, "taking instructions/helping" means "[a]ttending to the work assignment instructions or orders of supervisor. (No immediate response required unless clarification of instructions or orders is needed.) Helping applies to 'non-learning' helpers." DOT App. B–Explanation of Data, People, & Things, available at 1991 WL 688701.

---

3. These are the *same* five positions that also do not require fast-paced production standards.

In sum, the undersigned finds Plaintiff's assertion that the ALJ failed to include a limitation with respect to pace work to be without merit. In addition, to the extent the ALJ erred in omitting credited limitations from the RFC, such error is harmless because five of the six positions identified by the VE are consistent with the at-issue limitations. *See, e.g.*, *Wills v. Colvin*, No. 14-C-960, 2016 WL 1060254, at *9 (E.D. Wis. Mar. 15, 2016) (finding harmless error where limitations were omitted, but the representative jobs the VE identified were unskilled, explaining "[s]ince unskilled jobs are by definition 'simple, routine, and repetitive,' the omission from the hypothetical of these limitations is harmless" (citation omitted)); *Riley v. Comm'r of Soc. Sec.*, No. 3:11-cv-194, 2012 WL 553123, at *8 (S.D. Ohio Feb. 21, 2012) (ALJ's failure to include certain RFC limitations is harmless error where the claimant could still perform her past relevant work despite these limitations); *see also Kobetic v. Comm'r*, 114 F. App'x 171, 173 (6th Cir. 2004) ("When remand would be an idle and useless formality, courts are not required to convert judicial review of agency action into a ping-pong game." (internal quotation marks and citation omitted)). Accordingly, it is **RECOMMENDED** that Plaintiff's first contention of error be **OVERRULED**.

**B.     Weighing and Consideration of Dr. Dominguez's Opinion**

Plaintiff next argues that the ALJ erred in discrediting the opinion from treating physician Dr. Dominguez. The undersigned disagrees.

The ALJ must consider all medical opinions that he or she receives in evaluating a claimant's case. 20 C.F.R. § 416.927(c). The applicable regulations define medical opinions as "statements from acceptable medical sources that reflect judgments about the nature and severity of your impairment(s), including your symptoms, diagnosis and prognosis." 20 C.F.R.

§ 416.927(a)(1).

The ALJ generally gives deference to the opinions of a treating source "since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of [a patient's] medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical filings alone . . ." 20 C.F.R. § 416.927(c)(2); *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 408 (6th Cir. 2009). If the treating physician's opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the claimant's] case record, [the ALJ] will give it controlling weight." 20 C.F.R. § 404.1527(c)(2).

If the ALJ does not afford controlling weight to a treating physician's opinion, the ALJ must meet certain procedural requirements. *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004). Specifically, if an ALJ does not give a treating source's opinion controlling weight:

> [A]n ALJ must apply certain factors-namely, the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and the specialization of the treating source-in determining what weight to give the opinion.

*Id.* Furthermore, an ALJ must "always give good reasons in [the ALJ's] notice of determination or decision for the weight [the ALJ] give[s] your treating source's opinion." 20 C.F.R. § 416.927(c)(2). Accordingly, the ALJ's reasoning "must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." *Friend v. Comm'r of Soc. Sec.*, 375 F. App'x 543, 550 (6th Cir. 2010) (internal quotation omitted). The United States Court of Appeals for

13

the Sixth Circuit has stressed the importance of the good-reason requirement:

> "The requirement of reason-giving exists, in part, to let claimants understand the disposition of their cases," particularly in situations where a claimant knows that his physician has deemed him disabled and therefore "might be especially bewildered when told by an administrative bureaucracy that she is not, unless some reason for the agency's decision is supplied." *Snell v. Apfel*, 177 F.3d 128, 134 (2d Cir. 1999). The requirement also ensures that the ALJ applies the treating physician rule and permits meaningful review of the ALJ's application of the rule. *See Halloran v. Barnhart*, 362 F.3d 28, 32–33 (2d Cir. 2004).

*Wilson*, 378 F.3d at 544–45. Thus, the reason-giving requirement is "particularly important when the treating physician has diagnosed the claimant as disabled." *Germany-Johnson v. Comm'r of Soc. Sec.*, 313 F. App'x 771, 777 (6th Cir. 2008) (citing *Rogers*, 486 F.3d at 242). There is no requirement, however, that the ALJ "expressly" consider each of the *Wilson* factors within the written decision. *See Tilley v. Comm'r of Soc. Sec.*, 394 F. App'x 216, 222 (6th Cir. 2010) (indicating that, under *Blakley* and the good reason rule, an ALJ is not required to explicitly address all of the six factors within 20 C.F.R. § 404.1527(c)(2) for weighing medical opinion evidence within the written decision).

Finally, the Commissioner reserves the power to decide certain issues, such as a claimant's residual functional capacity. 20 C.F.R. § 404.1527(d). Although the ALJ will consider opinions of treating physicians "on the nature and severity of your impairment(s)," opinions on issues reserved to the Commissioner are generally not entitled to special significance. 20 C.F.R. § 404.1527(d); *Bass v. McMahon*, 499 F.3d 506, 511 (6th Cir. 2007).

As discussed above, the ALJ assigned "little weight" to the October 2016 opinion from Dr. Dominguez. Although Plaintiff maintains that the ALJ failed to give good reasons for the weight assigned, the ALJ provided the following lengthy discussion of how she arrived at her determination:

14

> Robert Dominguez, MD, provided a checkbox form dated October 11, 2016, indicating that the claimant was significant limited by his mental impairments (Ex. 36F). First, although it appears Dr. Dominguez is a treating source at the Fairfield Community Health Center, as that is where the form was sent, there is no evidence in that file that he actually treated the claimant or has a longstanding treating relationship with the claimant allowing him to provide a valid opinion on the claimant's functioning. The record from Fairfield Community Health Center only document care from two certified nurse practitioners and a therapist (see e.g., Exhibits 34F; 35F). Moreover, this opinion is merely a check box form, which does not offer a function-by-function analysis of what the claimant can do despite his impairments, merely a conclusory assertion. Further, Dr. Dominguez does not provide sufficient clinical and laboratory date to support his conclusion, as it appears at the last actual therapy session, the claimant's symptoms and functioning were improving with medication management and therapy (Ex. 34F/31). Therefore, the undersigned gives this checkbox form, insofar as it is considered an opinion, little weight.

(R. at 20.)

The undersigned finds no error with the ALJ's consideration and weighing of Dr. Dominguez's opinion. The ALJ articulated the weight she afforded the opinion and properly declined to afford it controlling weight on the grounds it was unsupported and conclusory. *See* 20 C.F.R. § 404.1527(c)(2) (identifying "supportability" as a relevant consideration).

First, the ALJ reasonably discounted Dr. Dominguez's opinion due to the apparent lack of a treating relationship between Dr. Dominguez and Plaintiff. The length and the nature and extent of a treating relationship are proper considerations when weighing an opinion from a treating source. *See* 20 C.F.R § 404.1527(c)(2)(i)-(ii). To qualify as a treating source, the physician must have an "ongoing treatment relationship" with the claimant. 20 C.F.R. § 404.1502. A Court must determine whether or not an ongoing treatment relationship exists at the time the physician's opinion is rendered. *Kornecky v. Comm'r of Soc. Sec.*, No. 04-2171, 167 F. App'x 496, 506 (6th Cir. Feb. 9, 2006) ("[T]he relevant inquiry is . . . whether [claimant] had the ongoing relationship with [the physician] *at the time he rendered his opinion.* [V]isits to

15

[the physician] *after* his RFC assessment could not retroactively render him a treating physician at the time of the assessment."); *see also Yamin v. Comm'r of Soc. Sec.*, 67 F. App'x 883, 885 (6th Cir. 2003) ("These two examinations did not give [the physician] a long term overview of [the claimaint's] condition."). Here, the record reflects that Plaintiff received treatment at the Fairfield Community Health Center since at least January 2016. (*See* R. at 574-625.) But the records reflect only that Plaintiff was treated by Marie Jones, CNP (R. at 574-77, 608-11, 616-21); Molly Thomas, LISW (R. at 578-95, 604-07); and Melanie Perkins Graham, CNP (R. at 596-603, 612-15, 622-25). To the extent other records exist that would establish a treating relationship, it was Plaintiff's burden to supply those records. *See* 20 C.F.R. § 404.1512(a)(1) ("You must inform us about or submit all evidence known to you that relates to whether or not you are blind or disabled.") Thus, the ALJ did not err in discounting Dr. Dominguez's opinion given the absence of record evidence establishing a treatment relationship.

Second, the ALJ reasonably discredited Dr. Dominguez's opinion on the basis that it was a conclusory, checkbox form without "sufficient clinical or laboratory data to support his conclusion." (R. at 20.) As the Sixth Circuit has held, an ALJ may properly assign little weight to checkbox form opinions from treating sources "where the physician provided no explanation for the restrictions entered on the form and cited no supporting objective medical evidence." *Ellars v. Comm'r of Soc. Sec.*, 647 F. App'x 563, 567 (6th Cir. 2016). In this case, the opinion form from Dr. Dominguez comprised a series of checkboxes related to Plaintiff's mental abilities to work, as well as a comment section where Dr. Dominguez explained:

> [A]nxiety [and a] desire to completely avoid people prevent Jason from maintaining employment. Patient reports feeling angry when he has to talk to people. Patient has had three jobs[,] one which lasted two days and two lasting only two hours. Moderate impaired ability to make good judgment. Thought content: obsessional,

16

paranoid, fear & avoidance of people.

(R. at 626-27.) Significantly, in his remarks, Dr. Dominguez did not cite any supporting objective medical evidence or reference treatment notes that would support his conclusions. Additionally, the opinion form included sections for Dr. Dominguez to "[e]xplain limitations falling in the three the most limited categories . . . and include the medical/clinical findings that support this assessment," (R. at 627), yet Dr. Dominguez failed to complete this section of the form. At best, it appears that Dr. Dominguez relied on Plaintiff's subjective reports and complaints. *Cf. Poe v. Comm'r of Soc. Sec.*, 342 F. App'x 149, 156 (6th Cir. 2009) ("[S]ubstantial evidence supports the ALJ's determination that the opinion of Dr. Boyd, [the claimant's] treating physician, was not entitled to deference because it was based on [the claimant's] subjective complaints, rather than objective medical data.").

Finally, as the ALJ points out, recent progress notes from the Fairfield Community Health Center contradict Dr. Dominguez's restrictive opinion and reflect that Plaintiff's symptoms were improving with treatment. (*See* R. at 604 (March 2016 process notes indicating "[s]ome progress," including decreased anxiety and increased social interactions).) The undersigned is therefore persuaded that the ALJ gave good reasons for discrediting Dr. Dominguez's opinion and that those reasons are supported by substantial evidence.

In sum, the undersigned concludes that the ALJ did not violate the treating physician rule or otherwise err in her consideration and weighing of Dr. Dominguez's opinion. It is therefore **RECOMMENDED** that Plaintiff's second contention of error be **OVERRULED**.

## VI. DISPOSITION

From a review of the record as a whole, the undersigned concludes that substantial evidence supports the ALJ's decision denying benefits. Accordingly, it is **RECOMMENDED** that the Court **OVERRULE** Plaintiff's Statement of Errors and **AFFIRM** the Commissioner of Social Security's decision.

## VII. PROCEDURE ON OBJECTIONS

If any party objects to this Report and Recommendation, that party may, within fourteen (14) days of the date of this Report, file and serve on all parties written objections to those specific proposed findings or recommendations to which objection is made, together with supporting authority for the objection(s). A Judge of this Court shall make a *de novo* determination of those portions of the Report or specified proposed findings or recommendations to which objection is made. Upon proper objections, a Judge of this Court may accept, reject, or modify, in whole or in part, the findings or recommendations made herein, may receive further evidence or may recommit this matter to the Magistrate Judge with instructions. 28 U.S.C. § 636(b)(1).

The parties are specifically advised that failure to object to the Report and Recommendation will result in a waiver of the right to have the District Judge review the Report and Recommendation *de novo*, and also operates as a waiver of the right to appeal the decision of the District Court adopting the Report and Recommendation. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

/s/ *Chelsey M. Vascura*
CHELSEY M. VASCURA
UNITED STATES MAGISTRATE JUDGE